IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DAVID W. AMICK, ) | CIVIL ACTION NO. 9:11-0192-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. Plaintiff filed an application for Disability Insurance Benefits (DIB) on September 26, 2005, alleging disability as of October 5, 2004 due to results of bilateral hip replacements. (R.pp. 110-111, 121).

Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on October 3, 2008. (R.pp. 21-67). The ALJ thereafter denied Plaintiff's claim in a decision issued December 1, 2008. (R.pp. 10-20). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-3).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further proceedings or for an award of benefits. The Commissioner



contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was forty (40) years old when he alleges he became disabled, has a high school education with past relevant work experience as an

2



order filler and warehouse worker. (R.pp. 60, 110, 129, 131). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of bilateral avascular necrosis of the hips with bilateral total hip replacements, and a history of a left fractured patella, rendering him unable to perform his past relevant work, he nevertheless retained the residual functional capacity (RFC) to perform a restricted range of sedentary work[2], and was therefore not entitled to disability benefits. (R.pp. 12-13, 18).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to determine his exertional capacity to sit as part of his RFC finding, and by failing to accord sufficient weight to the opinion of Plaintiff's treating orthopedist, Dr. Randall Suarez. However, after careful review and consideration of the evidence and arguments presented, the Court finds for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision must therefore be affirmed.

---

[1]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[2]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).



**I.**

**(Medical Evidence)**

The medical record reflects that in October 2004 Plaintiff was found to have severe degenerative changes of the right femoral head, and was referred to orthopedic surgeon Dr. Frank Voss for possible hip replacement surgery. (R.pp. 244, 246). Plaintiff was seen by Dr. Voss on October 29, 2004, where he complained of a chronic backache, joint pain in the right hip, and swelling in the right hip. On examination Dr. Voss found Plaintiff's right leg to be "markedly shortened", and that Plaintiff had a severe limp. Radiographs showed "severe collapse of his right hip", as well as osteonecrosis[3] of the left hip. However, Plaintiff had no restriction in his range of motion in his left hip, his sensation was intact, there was no pedal edema noted, and his motor strength was found to be 5/5 (full). Dr. Voss opined that Plaintiff's osteonecrosis could possibly be related to Plaintiff's alcoholism, although it also could be a result of steroids from a previous medication. Dr. Voss recommended a total right hip arthroplasty, which Dr. Voss thereafter performed on November 30, 2004. At the surgery, Dr. Voss noted that Plaintiff had osteonecrosis of both hips, although the left side was asymptomatic and "pre collapse". (R.pp. 205, 300-301).

At the conclusion of the surgery, the length of both of Plaintiff's legs was equal, and Plaintiff's hip was completely stable and had no tendency to dislocate. (R.pp. 205-206). Plaintiff was thereafter discharged from the hospital on December 3, 2004, at which time he was ambulating

---

[3]Osteonecrosis is bone death caused by poor blood supply to the area. After a while the bone can collapse. If this condition is not treated, the joint will deteriorate and this will become severe arthritis. It is most common in the hip and shoulder, but can affect other large joints such as knee, elbow, wrist and ankle. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0004519/, June 4, 2011.



with a rolling walker. Plaintiff was referred to physical therapy and weight bearing activity "as tolerated to right lower extremity". (R.p. 203).

Plaintiff was seen by Dr. Voss for a follow-up visit on December 14, 2004, at which time Plaintiff reported that he had had good pain relief. Plaintiff's leg lengths appeared to be nearly equal, and there was no pedal edema. Dr. Voss removed Plaintiff's staples, and gave him the okay to remain full weight bearing. (R.p. 298). When Plaintiff was seen again on January 11, 2005, it was noted that he had been full weight bearing and had driven himself to the clinic. On examination Plaintiff's leg lengths appeared equal, there was no pedal edema, and his hip range of motion was "spectacular". (R.p. 297). On February 18, 2005, Plaintiff reported that he was "delighted with the progress that his right hip [had] made". While Plaintiff did report some symptoms in his left hip, they were not enough to warrant any concern. (R.p. 296).

Over the next few months Plaintiff had increasing problems with his left hip, and by May 4, 2005 his left hip was hurting as much as his right hip had prior to his surgery. Dr. Voss noted that Plaintiff's right hip was "doing extremely well", and he scheduled Plaintiff for a left total hip arthroplasty, which was performed on May 19, 2005. (R.pp. 235-236, 294). Plaintiff was thereafter discharged from the hospital on May 21, 2005, at which time he was ambulating well (over 300 feet with a rolling walker), and was able to negotiate stairs without difficulty. Plaintiff was instructed to continue with his physical therapy. (R.pp. 233-234). When Plaintiff was seen for a follow-up on June 1, 2005, his pain had diminished, he was walking well, and his mobility was "great". It was noted that Plaintiff was able to walk without assistive devices, and that overall he was doing very well. (R.p. 293).

However, Plaintiff subsequently experienced "loosening of his cup", and a revision



of his left total hip arthroplasty was performed on July 12, 2005. (R.pp. 250-251). This procedure was successful, and by July 25, 2005, Plaintiff was doing well, was performing physical therapy as directed, and was off all of his narcotic pain medications. On examination Plaintiff had good hip range of motion, his distal sensation and capillary refill were normal, and there was no focal edema, erythema or induration. Plaintiff was advised that he could weight bear as tolerated, and that he could discontinue with his physical therapy. (R.p.292).

On August 29, 2005 Plaintiff was found to be in no acute distress with a slightly antalgic gait favoring his left lower extremity. Plaintiff had no pain with range of motion and was able to touch his fingertips to the floor without any difficulty. (R.p. 290). By September 13, 2005, Plaintiff was doing well, had no pain, and his gait was improving. (R.p. 289). On October 14, 2005, Plaintiff's abduction strength was somewhat weak and Plaintiff "waddle[d]" in terms of his gait, but Dr. Voss noted that Plaintiff was doing "quite well" with an "excellent range of motion". However, Dr. Voss did not believe Plaintiff could keep his old job (which required heavy lifting), because he did not want Plaintiff lifting heavier than thirty pounds or walking more than a mile or two at work. (R.p. 288). See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinion].

On November 9, 2005, state agency physician Dr. Charles Jones reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment in which he opined that Plaintiff had the ability to perform light work[4] with the ability to stand and/or walk for

---

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the
(continued...)



a total of at least two hours in an eight hour work day, sit with normal breaks for a total of about six hours in an eight hour work day, with a limitation in his ability to push and/or pull in his lower extremities. He further opined that Plaintiff would never be able to climb ladders/ropes/scaffolds or balance, but could occasionally climb ramps/stairs, stoop, kneel, crouch and crawl. Dr. Jones assessed no other functional limitations. (R.pp. 305-312). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

On January 11, 2006 Plaintiff went to the hospital emergency room complaining of left hip pain. Plaintiff stated that he had been having to step differently and step up to get some machinery while at work, which had caused pain in his left hip. On examination Plaintiff exhibited pain along the left greater trochanter area, but the attending physician noted that Plaintiff "really [did] not have any groin pain consistent with the hip joint area itself". Plaintiff was able to flex his hip about ninety degrees and externally rotate somewhat, his neurovascular examination appeared to be intact, his motor strength was 5/5 (full), and he had good equal and grip strength. Cf. Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]. X-rays were taken which revealed that Plaintiff's bilateral prostheses appeared be "seating well". Plaintiff was diagnosed with left hip pain secondary to over use and was discharged on pain medication. (R.pp. 318-319).

Plaintiff subsequently told Dr. Voss that he was having to lift heavy boxes of nails up

---

⁴(...continued)
time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



to fifty pounds regularly at work, and also needed to go up a high step. On examination Plaintiff's leg lengths were equal, his hip range of motion was good, and his abductor strength was good, although Plaintiff was experiencing some pain in his buttock. Dr. Voss advised him that he needed to get a "much more sedentary job". (R.p. 326). Craig, 76 F.3d at 590 [noting importance of treating physician opinion].

On March 6, 2006, Plaintiff self referred himself to Dr. Kurt Blassner for a second opinion regarding his left hip pain. Plaintiff related his medical history, and advised that with respect to his right total hip arthroplasty he was "quite happy with this hip". With respect to his left hip arthroplasty, Plaintiff stated that he had had about two months worth of history of wound healing difficulties, although it was noted that Plaintiff was not using any anti-inflammatories. On examination Plaintiff exhibited discomfort on palpation around the scar and over the abductor musculature of the left hip, although he had excellent motion with the flexion and performed abductions and flexion at lesser degrees with minimal discomfort, weaker on the left when compared to the right. Films showed no evidence of loosening or failure of surgical components on either the right or left hip. Dr. Blassner opined that he saw no evidence of loosening, failure, or inappropriately placed components, and stated that the majority of Plaintiff's difficulties were "most likely related to abductor musculature inflamation and issues." Due to Plaintiff's complaints, Dr. Blassner further thought it would be reasonable to aspirate Plaintiff's hip to evaluate for possible infection. (R.pp. 328-329). Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability].

On March 28, 2006, state agency physician Dr. Robert Kukla examined Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment in which he

8



opined that Plaintiff had the RFC for light work with the ability to stand and/or walk about six hours in an eight hour work day, sit with normal breaks for a total of about six hours in an eight hour work day, with limited ability to push and/or pull in his lower extremities. Dr. Kukla further opined that Plaintiff could occasionally perform all postural activities, with no other limitations in his functional capacity. (R.pp. 331-338). Smith, 795 F.2d at 345 [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

On April 26, 2006, Plaintiff presented to Dr. William Korman (Plaintiff's family physician) for complaints of low back pain. Dr. Korman prescribed some medication and referred Plaintiff to physical therapy. (R.p. 415). Plaintiff was also seen by Dr. Korman on March 10, 2006 for complaints of left hip pain. Dr. Korman again prescribed Plaintiff some pain medication and noted that he would be referred to an orthopedic specialist. (R.p. 416). On July 18, 2007, Dr. Korman referred Plaintiff for a functional capacity study at Plaintiff's request. (R.p. 409).

Physical therapist Debra Iacono thereafter performed a Functional Capacity Evaluation on August 6, 2007. (R.pp. 350-357). After performing her evaluation, PT Iacono concluded that Plaintiff had a current work capacity "characterized by the Sedentary Light Physical Demand Level for work above the waist and the medium Light Physical Demand Level for work below the waist". She further opined that Plaintiff would not be able to return to his current job, and recommended vocational counseling and possible retraining. (R.p. 350).

Plaintiff was seen for the first time by Dr. Suarez on October 5, 2007, three years after he contends his hip condition had become disabling. Plaintiff reported his chief complaint as being bilateral hip pain, with pain and discomfort in both hips, the left worse than the right. However, the only medication Plaintiff reported taking was Aleve, an over the counter pain medication. Dr. Suarez



had some radiographic studies performed which showed Plaintiff's surgical prostheses to be in good position. Dr. Suarez noted that "[a]ll looks well", and opined that he did not "see anything that would indicate any reason for [Plaintiff] having pain". On examination Plaintiff exhibited a coxalgic gait bilaterally, but both hips rotated "pretty freely" without pain. Dr. Suarez also did not find any particular tenderness to palpation when palpating over Plaintiff's greater trochanters. Dr. Suarez assessed Plaintiff with apparent bilateral hip pain of an uncertain etiology. (R.pp. 374-375).

Some diagnostics studies were also performed, which showed no evidence of any infection. The radiologist thought that the results of these studies were "unremarkable", and Dr. Suarez opined that he "really did not see anything obvious on the x-ray, bone scan or the lab work." Dr. Suarez discussed treatment options with the Plaintiff, and noted that Plaintiff did "not feel that he is hurting enough to warrant any further surgery right now, which I did not think he did." Plaintiff was just to "live with it the best way [he] can . . . ." (R.p. 372).

Plaintiff returned to see Dr. Suarez on March 19, 2008, again complaining of bilateral hip pain, worse on the left. Plaintiff and his wife both related a history of Plaintiff experiencing significant pain, which Dr. Suarez also observed in the office. On physical examination, hip rotation was noted to be "a little uncomfortable but not terribly painful". Dr. Suarez observed that he was "not sure what is happening", but speculated that it "may be loosening [of Plaintiff's hardware from his surgery], although that [was] pure speculation." Dr. Suarez indicated that he would have some additional scans done, and "we will see if we see any other objective evidence of any problems with his prosthesis." (R.p. 371). However, when a bone scan was performed on March 27, 2008, it revealed no evidence of loosening, and on April 3, 2008, Dr. Suarez stated that Plaintiff's continued complaints of pain, particularly in the left hip, was "an enigma". (R.pp. 368, 370). Dr. Suarez also



performed an aspiration, which was normal. (R.p. 367).

Plaintiff returned to see Dr. Suarez on May 8, 2008, complaining of terrible pain in his hip after having to sit in a metal chair for one of his kid's baseball games. Dr. Suarez noted that "so far I have been unable to come up with anything as far as any reason for his pain", noting that Plaintiff had received the "same kind of opinion" from the Mayo Clinic (Dr. Blassner). Dr. Suarez stated "I cannot explain it", and indicated that he would seek a neurologic opinion for a possible explanation for Plaintiff's complaints of pain. (R.p. 366).

Plaintiff was then examined by neurologist Dr. Julian Adams on May 14, 2008. Plaintiff told Dr. Adams that his initial orthopedic surgeon claimed that his hip problems were due to "beer drinking", but advised that "at the present time his beer drinking has been greatly reduced for he claims that at one time he could hold as many as a dozen a day." Plaintiff complained of pain primarily confined to the left hip area, with milder pain in the right hip area which could be tolerated. Plaintiff denied any sensory loss in his distal lower extremities or in his trunk. From a neurological standpoint, Plaintiff's examination was normal, and Dr. Adams noted that "[o]ften times people who have a reduced alcohol intake as he has have accompanying pain syndrome associated with conscious or subconscious drug seeking behavior". (R.pp. 386-387). Dr. Adams did order some EMG and nerve conduction studies, the results of which were normal. (R.p. 388).

On June 3, 2008, Dr. Suarez completed a Medical Source Statement of Ability to do Work Related Activities (physical), in which he opined that Plaintiff had the lifting capacity for sedentary work with the ability to stand and/or walk for less than two hours in an eight hour workday, and sit for less than about six hours in an eight hour work day, with a limited ability to push and/or pull in his lower extremities. Dr. Suarez further opined that Plaintiff could never perform any



postural activities, that he could never reach and only occasionally handle, finger or feel, and that he would require complete freedom to rest frequently (defined as at least two to three hours a day). Plaintiff also had only a limited ability to tolerate temperature extremes, vibrations, humidity/wetness, and hazards such as machinery and heights. Dr. Suarez concluded by opining that Plaintiff had not been able to work on a full time basis since his second left hip surgery on July 12, 2005. (R.pp. 401-405).

On June 5, 2008, Dr. Korman opined that he believed Plaintiff's ability to work was clearly impaired as a result of his hip pain and that he believed that it was reasonable that Plaintiff seek "some disability status." (R.p. 407).

## II.

### (RFC Determination)

The ALJ reviewed this medical record and the subjective testimony from the hearing and concluded that Plaintiff retained the RFC for sedentary work with the ability to stand and/or walk up to two hours in an eight hour work day; with only occasional stooping, twisting, crouching, kneeling, and climbing of ramps and stairs; but no crawling or balancing; no climbing of ladders and scaffolds; and with no use of foot pedals or other controls with both lower extremities. (R.p. 13). These findings are supported by substantial evidence in the case record. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

In reaching his decision, the ALJ noted Dr. Voss' medical records reflecting successful right total hip replacement surgery and that following this surgery any residual left hip symptoms were not enough to warrant concern; and Dr. Voss' records with respect to Plaintiff

12



subsequent left hip surgery, following which Dr. Voss had recommended work restrictions of no lifting over thirty pounds and no walking much more than a mile or two at work. (R.pp. 288, 296). The ALJ also the noted results of Plaintiff's physical examinations, where he was found to have full motor strength and intact neurovascular function, and Dr. Voss' opinion that Plaintiff needed to work at a more sedentary job. See (R.pp. 15-16, 288, 318-319, 326). The ALJ determined that the overall weight of the evidence supported Dr. Voss' conclusions, and he gave Dr. Voss' opinion significant weight. (R.pp. 16); see Craig, 76 F.3d at 589-590 [noting importance of treating physician opinion]; see also Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)[the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]

       The ALJ further noted the findings of Dr. Blassner's March 2006 evaluation, where he found that Plaintiff had excellent range of motion with minimal discomfort, with weak hip flexion and abductors on the left when compared to the right, Dr. Korman's records showing Plaintiff received only conservative treatment for his complaints, the results of Plaintiff's functional capacity evaluation and the records from Dr. Adams, as well as Plaintiff's own reported activities of driving, taking the children to school daily, showing and bathing without assistance, dressing mostly independently with some assistance from his wife when putting pant on, occasionally cooking for his family, occasionally doing the laundry, and do some shopping. (R.pp. 14, 17, 28-31). See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [assessment of an examining physician may properly be given significant weight]; Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *5 (D.S.C. Mar. 29, 2004), aff'd; Knox v. Astrue, 327 Fed.Appx. 652, 657 (7th Cir. 2009)["[T]he expression of a



claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient"], citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]; Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [conservative treatment not consistent with allegations of disability]; Gaskin, 280 Fed.Appx. at 477 [Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]; Haynes v. Astrue, No. 09-484, 2010 WL 3377715 at * 3 (M.D.Ala. Aug. 25, 2010)["Muscle atrophy is an objective medical indication of pain and lack thereof in [Plaintiff] militates against the conclusion that she suffers from pain which precludes her from substantial gainful activity."]. Finally, the ALJ also gave the state agency medical consultants' conclusions that Plaintiff is capable of sustained work activities significant weight, finding that these conclusions were supported by and consistent with the objective medical evidence. (R.p. 14). Smith, 795 F.2d at 345 [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; Marquez v. Astrue, No. 08-206, 2009 WL 3063106 at * 4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner].

After a review of record and evidence in this case, the Court can find no reversible error in the ALJ's treatment of the record evidence in this case when reaching his decision on the extent of Plaintiff's pain and limitations. See Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions



reached are rational]; Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that she has a disabling impairment]. The ALJ thoroughly reviewed the objective medical evidence, compared it with the Plaintiff's subjective testimony as to the extent of his pain and limitations, and found that Plaintiff's claims concerning the intensity, persistence, or limiting effects of his symptoms were not credible to the extent they were inconsistent with his findings. While Plaintiff argues there is evidence in the record from which more severe findings could have been inferred, the ALJ was not required to accept only the more severe diagnoses of Plaintiff's condition. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]. Rather, the ALJ's role is to review *all of the evidence* and consider that evidence in making his decision. Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]. The ALJ' decision reflects that that is what he did in this case. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

Plaintiff's main complaint with the ALJ's decision is that the ALJ made no specific determination with respect to Plaintiff's ability to sit for an extended period of time. Plaintiff notes that SSR 83-10 states that work at the sedentary level of exertion should generally have periods of standing or walking totaling no more than about two hours in an eight hour work day, with sitting generally totally approximately six hours in an eight hour work day, and that the ALJ's RFC finding does not address any limitations in Plaintiff's ability to sit, nor did the ALJ's hypothetical to the

15



Vocational Expert address this issue. See (R.pp. 13, 62). The Commissioner does not dispute that no specific reference was made to Plaintiff's ability to sit in the ALJ's RFC determination, but argues that Plaintiff's contention that the decision should be reversed for this reason is without merit, as the ability of Plaintiff to sit for about six hours in an eight hour work period is implicit in the ALJ's decision. The Court agrees.

The exertional categories of work are defined in part by the amount of time the claimant can walk/stand and sit during an eight hour workday, with sedentary work being classified as requiring periods of standing or walking of generally no more than two hours in an eight hour work day, and sitting for a total of approximately six hours in an eight hour work day. 20 C.F.R. § 404.1567; see also SSR 83-10. Therefore, by finding that Plaintiff had the RFC for sedentary work with the ability to stand and/or walk up to two hours in an eight hour work day, the ALJ implicitly found that Plaintiff was able to sit for the remaining portion of the work day. See Depover v. Barnhardt, 349 F.3d 563, 567-568 (8th Cir. 2003)[Denying remand after finding substantial evidence for ALJ's implicit findings of no limitation on the claimant's ability to sit, stand, or walk]. To the extent the ALJ should have stated a specific sitting period as part of his RFC finding, his failure to do so in this case was at most harmless error. See Shinseki v. Sanders, 129 S.C. 1696, 1706 (2009)[Party attacking the agency's determination normally has the burden of showing that an error warrants reversal of the decision]; United States v. Wacker, 72 F.3d 1453, 1473 (10th Cir. 1995)[Error is harmless unless it leaves one in grave doubt as to whether it had a substantial influence on the outcome of the case]; Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1999)["No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"].



Therefore, Plaintiff's argument that the ALJ committed reversible error in reaching his RFC finding in this case is without merit. See Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987) [an arguable deficiency in opinion writing is not cause for reversing the Commissioner]; Mickles, 29 F.3d at 921 [Affirming denial of benefits where ALJ would have reached the same result notwithstanding his error]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

### III.

### (Treating Physician Opinion)

Plaintiff also argues that the ALJ committed reversible error by failing to follow the opinion of Plaintiff's treating physician Dr. Suarez that Plaintiff was limited to sitting for less than six hours in an eight hour day and other findings. See (R.pp. 401-405). A review of the decision shows that the ALJ discussed Dr. Suarez's medical records and findings, including his conclusion that Plaintiff had not been able to work on a full time basis since July 12, 2005,[5] but gave Dr. Suarez's conclusions only partial weight. Specifically, the ALJ determined that the overall evidence generally supported Dr. Suarez's conclusions about the restrictions on Plaintiff's ability to lift, carry, stand and walk, but that otherwise his conclusions were not consistent with his own treatment notes, the treatment notes from other physicians,[6] or the diagnostic testing including x-rays, all as discussed

---

[5]Notably, Plaintiff's claim is that he has been disabled and unable to work since October 5, 2004.

[6]In making this finding, the ALJ also discounted Dr. Korman's statement that Plaintiff should seek
(continued...)



throughout his decision. (R.pp. 17-18). The Court finds no reversible error in this conclusion. Cf. (R.pp. 288-290, 300-301, 305-312, 318-319, 326, 328-329, 331-338, 366, 368, 372, 374-375, 386-388); see Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion justified where treating physician's opinion was inconsistent with substantial evidence of record].

Notwithstanding the severity of Plaintiff's condition as opined to by Dr. Suarez in June 2008, the ALJ noted and discussed the contrary medical evidence in the record, including that Plaintiff generally only requires mild prescription medication or over the counter medications, that diagnostic testing has consistently shown that Plaintiff's hip prostheses are intact and without complications, and other minimal objective findings (including by Dr. Suaraz) in discounting Dr. Suarez's conclusions. See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003)[Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]; Lee, 945 F.2d at 692 [ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; Jolley, 537 F.2d at 1181 [finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled].

Indeed, it is readily apparent that Dr. Suarez's opinion of Plaintiff's degree of impairment as reflected in his Medical Source Statement of June 3, 2008 is based on Plaintiff's own subjective reports of the seriousness of his condition, since Dr. Suarez's own records fail to substantiate a basis for these symptoms and Dr. Suarez himself stated that he did not "see anything that would indicate any reason for [Plaintiff] having pain". Cf. (R.pp. 366-368, 370-372, 374-375,

---

$^6$(...continued)
some kind of disability status. (R.p. 17).



401-405); see Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ properly rejected physician's opinion that was based on the claimant's own subjective complaints]; cf. Craig, 76 F.3d at 590, n. 2 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may assign lesser weight to the opinion of a treating physician that was based largely upon a claimant's self-reported symptoms].

After review of the record and evidence in this case, the Court can find no reversible error in the ALJ's treatment of Dr. Suarez's opinion as to the extent of Plaintiff's pain and limitations. See Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)["When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted)]; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(e) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"]. Therefore, this argument is without merit.

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this



Court is required to uphold the decision, even should the Court disagree with the decision.  <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  Therefore, it is **Ordered** that the decision of the Commissioner is **affirmed**.

**IT IS SO ORDERED**.

_____
Bristow Marchant
United States Magistrate Judge

June 11, 2012
Charleston, South Carolina

**The parties are hereby notified that any right to appeal this Order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure**

